

305 Broadway, Suite 1200
New York, New York 10007
(212) 385-1400
Fax: (212) 385-1401
firm@stephenslawny.com
www.stephenslawny.com

March 5, 2024

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    Juan De Jesus v. Fordham Fulton Realty Corp. *et ano*.
               Joint Request for Judicial Approval of FLSA Claims Settlement
               Case No. 1:20-CV-10951(AT)

Dear Judge Torres:

I am counsel for Plaintiff Juan De Jesus and write you with the consent of counsel for Defendants. We write to inform you that the parties have reached a settlement of the above referenced action. We submit this joint letter pursuant to ***Cheeks v. Freeport Pancake House, Inc.***, 796 F.3d 199 (2d Cir. 2015). Annexed as Exhibit A, please find a copy of the proposed Settlement Agreement. Upon approval of the Settlement Agreement, the parties will file with the Court an executed Stipulation of Dismissal pursuant to Fed. R. Civ. P. Rule 41. Annexed as Exhibit B are copies of Plaintiff's billing records in the matter. The parties respectfully submit that your Honor should approve the settlement and so-order the stipulation of dismissal because it is a reasonable compromise of Plaintiff's claims, after lengthy negotiations and substantial proceedings in the case.

    **I.**    **Procedural History and Settlement Agreements' Terms**

This action was commenced on December 28, 2020, to recover damages for unpaid overtime wages under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL), by Juan De Jesus, on behalf of himself and similarly situated employees of the Defendants.

Plaintiff, who is a former porter employed by Defendants, alleged that Defendants required him to work beyond forty hours weekly but did not compensate him for those hours in accordance with the FLSA and NYLL. Defendants denied that Plaintiff performed any unpaid hourly work, and alleged that Plaintiff and all similarly situated employees were compensated for all overtime hours worked at the lawful overtime rate. Specifically, Defendants denied that Plaintiff worked the schedule of hours that Plaintiff alleged in the complaint.

The parties, with leave of the Court, attempted to negotiate a settlement of the dispute between themselves, and were successful in doing so.

Plaintiff alleged that he was owed $11,782.00 in unpaid overtime wages. See Declaration of Juan De Jesus, annexed hereto as Exhibit C; Plaintiff's Damages Calculations, annexed hereto as Exhibit D.[1] Plaintiff further alleged that he was owed an additional $10,000.00 in statutory damages pursuant to Section 195 of the NYLL.

In this matter, the original counsel for Defendant Fordham Fulton Realty, Corp. (Fordham) was relieved after Fordham failed to provide discovery or otherwise participate in its defense, and Defendant Lotus Management Services, Inc., (Lotus) did not appear. As a consequence, at the direction of the Court, Plaintiff moved for a default judgment. Eventually, both Defendants appeared by present counsel, and the parties were thereafter able to negotiate the present settlement. The parties' settlement negotiations contemplated the added burdens of this case history.

In view of the denial by Defendants of liability for overtime damages, Plaintiff made a demand for purposes of settlement of $7,500.00, plus the $10,000.00 statutory damages, $9,000.00 attorneys' fees covering the time between Court's order directing Defendant Fordham to appear by new counsel and the time present defense counsel appeared for both Defendants, and $1,150.00, representing process server fees and costs incurred by Plaintiff, for a total demand of $27,650.00. These additional demands for attorney's fees and process server fees and costs were premised on the failure of Defendants either to appear in the action or to comply with the orders of the Court, which resulted in additional motion practice on the part of counsel for Plaintiff. The parties eventually reached a settlement of $22,500.00.

The Settlement Agreement contemplates the distribution of the settlement funds as follows:

- $539.50 to The Stephens Law Firm PLLC for process server fees;
- $402.00 to The Stephens Law Firm PLLC for court fees;
- $298.30 to The Stephens Law Firm PLLC for document production and copying fees;
- $39.00 to The Stephens Law Firm PLLC for professional search services;
- $11,883.87 to The Stephens Law Firm PLLC, for attorney's fees, including a proportionate share of the fees incurred between the Court's Order directing Fordham to obtain new counsel and the date new counsel entered into the case, plus one-third of actual and compensatory damages in accordance with the retainer agreement; and
- $9,327.33 to Juan De Jesus for actual and compensatory damages, including both NYLL/FLSA overtime wages and NYLL § 195 statutory damages.

## II.     The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07 (with prejudice); see also **Samake v. Thunder Lube, Inc.**, 24 F.4th 804, 810 (2d Cir. 2022) (without prejudice). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." **Kochilas v. Nat'l Merch. Servs., Inc.**, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.*  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.*

---

[1] Plaintiff's declaration accurately reflects Plaintiff's best recollection of his actual hours worked, based on Plaintiff's regular work schedule and rate and manner of pay during the FLSA and NYLL statutory periods. At the time of filing of the Complaint, Plaintiff's belief was that the total hours worked was higher than the total set forth in his declaration, but that the weekly rate of pay was the same.

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in ***Wolinsky v. Scholastic, Inc.***, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), which the Second Circuit has twice recently endorsed. See ***Fisher v. SD Protection Inc.***, 948 F.3d 593, 600 (2d Cir. 2020); ***Yu v. Hasaki Rest., Inc.***, 944 F.3d 395, 413 (2d Cir. 2019). The ***Wolinsky*** factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. See ***Chen v. Xpres Spa at Terminal 4 JFK, LLC***, 2021 WL 4487835, at *4 (E.D.N.Y. Oct. 1, 2021) (Cogan, J.) (citing and applying *Wolinsky* factors). The parties submit that their settlements of Plaintiffs' FLSA claims are fair and reasonable based on an analysis of the ***Wolinsky*** factors.

      a. *Range of Possible Recovery*

Given the defenses in the matter, the outcome of the case was particularly successful for the Plaintiff. Defendants agreed to pay a substantial portion of the amounts demanded by Plaintiff. The settlement covered the period from December 31, 2017, through April 18, 2020. Plaintiff alleges that he was owed $11,782.00 in unpaid overtime wages and nothing in unpaid minimum wages. The settlement amount contemplates payment of slightly more than 81 percent of the total amounts demanded, including Plaintiff's overtime wages, NYLL statutory damages, and attorney's fees. The net settlement amount is essentially double the amount of wages Plaintiff claims was owed during the FLSA window.

In this action, Plaintiff claimed unpaid minimum and overtime wages under both the FLSA and NYLL, failure to provide wage statements in violation of NYLL § 195(3), failure to provide pay notices upon hiring pursuant NYLL to § 195(1), and other statutory and common law claims. Plaintiff alleged that the failure to pay minimum and overtime wages was wilful. As is set forth above, a calculation of Plaintiff's damages showed that Plaintiff was owed $11,782.00 in overtime wages but no minimum wage pay. Had Plaintiff prevailed on all his claims, including his claims of wilfulness, Plaintiff could expect to recover $11,782.00 in unpaid wages and $11,782.00 in liquidated damages, for a total of $23,584.00. Additionally, Plaintiff could recover $5,000.00 on his claim for failure to provide wage statements in violation of NYLL § 195(3), plus an additional $5,000.00 for failure to provide a pay notice upon hiring pursuant to NYLL § 195(1). The parties executed their Stipulation of Settlement on August 23, 2022. As of that date, had the Plaintiff prevailed on all his claims, he would be due a total of $3,153.36 in prejudgment interest. See Exhibit D, annexed hereto. In total, therefore, had he prevailed on all his claims, Plaintiff could expect a maximum recovery of unpaid wages, liquidated damages, and prejudgment interest in the amount of $36,737.36.

      b. *Avoiding Burdens and Potential Risks of Litigation*

Regarding the second and third ***Wolinsky*** factors, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum. As set forth above, Defendants disputed Plaintiff's work schedule. Specifically, Defendants argued that all other similarly situated employees worked a regular daily schedule one hour shorter than that alleged by Plaintiff -- a claim Plaintiff has acknowledged -- and disputed that Plaintiff worked additional hours for which he was not adequately compensated. In sum, Defendants denied owing Plaintiff any unpaid wages. It was therefore entirely possible that, had the matter gone to trial, Defendants would have been successful in challenging the entirety of Plaintiff's claims for unpaid wages under the NYLL and FLSA. Despite these challenges, Plaintiff was able to negotiate a settlement that compensated for a substantial portion of his claims for overtime wages, plus statutory damages. Plaintiff

agreed to the settlement because he understands that, if he were to continue with the litigation -- even if successful -- he may never receive more money than what Defendants are now offering, or even any money at all. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." ***Flores v. Mama Lombardi's of Holbrook, Inc.***, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks and expenses only expected to substantially rise for all parties in this matter, and likelihood of recovery greater now than ever hence, the Settlement Sum is fair and reasonable.

### c. *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlements are the product of arm's-length bargaining and are a reasonable, non-collusive resolution of the case, the settlement negotiations were protracted and concluded after many negotiations between counsel. See, e.g. ***Romero v. La Revise Assocs., L.L.C.***, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement").

Furthermore, the Agreement does not contain any terms that would militate against the Court approving them. For instance, Plaintiffs have not agreed to a general release of all claims, but rather, only a release of all wage claims under the FLSA and NYLL. Likewise, the Agreement does not contain a confidentiality clause or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." ***Flood v. Carlson Restaurants Inc.***, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) citing ***Lopez v. Nights of Cabiria, LLC***, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015); compare ***Ezpino v. CDL Underground Specialists, Inc.***, 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (approving settlement agreement where it did not contain a confidentiality provision); *with* ***Gonzalez v. Lovin Oven Catering of Suffolk, Inc.****,* 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing ***Cheeks***, 796 F.3d at 206 and declining to approve FLSA settlement containing a confidentiality provision).

The settlement also contemplated the payment of additional sums for the portion of attorneys' fees specifically applicable to the work made necessary after Fordham failed to comply with the Court's order directing it to find new counsel, as well as the process server fees incurred by the Plaintiff.[2] A substantial portion of the attorney work hours in this case resulted from the failure of Defendant Fordham to comply with the Court's orders and the Defendant Lotus's default in the matter.

### III. The Requested Attorneys' Fees are Reasonable

Annexed as Exhibit B is a copy of the billing records for counsel for Plaintiff through September 26, 2022. Annexed as Exhibit E is a copy of the retainer agreement signed by Plaintiff. Pursuant to paragraph 4 of the retainer agreement, attorneys' fees are to be calculated as the largest amount calculated by any of the three following methods:

---

[2] Plaintiff's demand for payment of his process server fees are made pursuant to Rule 4 of the Federal Rules of Civil Procedure after Plaintiff was required to serve process on both defendants following the mailing of the complaint, notice of lawsuit, and waiver of service form, and Defendants' failure to appear. Defendant Lotus's designated agent for service repeatedly refused to accept service on behalf of Lotus, requiring additional expenditures of process server fees as well as additional costs in an attempt to perfect service. These additional costs were not included in the litigation costs set forth herein. Plaintiff was also required to serve his motion for a default on both parties by process server and through the New York Secretary of State.

      a. 33.33% of the gross amount collected (gross amount is defined to include all proceeds plus all payments of interest, plus all attorneys' fees awarded or agreed, as discussed in paragraph 6 below minus Expenses described in paragraph 5 below);

      b. an award or settlement payment specifically designated for attorneys' fees to which the Firm is entitled; or

      c. the amount to which the firm would be entitled were it to charge the Client on a discounted hourly rate as set forth in the retainer agreement.

The foregoing terms were agreed to in contemplation of the highly contingent nature of recoveries in wage and hour litigation.

The courts have recognized that "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." **Fisher v. SD Prot. Inc.**, 948 F.3d 593, 604 (2nd Cir. 2020) (quoting **Millea v. Metro-N. R. Co.**, 658 F.3d 154, 169 (2nd Cir. 2011) (emphasis in original)). For this reason, the Court of Appeals for the Second Circuit has repeatedly reaffirmed the power of the courts to award reasonable attorneys' fees in excess of a traditional one-third award. See **Fisher v. S.D. Prot. Inc.**, *supra*; **Torres v. Gristede's Operating Corp.**, No. 12-3336-cv (2nd Cir. 2013).

In the instant matter, the additional attorneys' fees sought beyond one-third of the recovery were an explicit part of the parties' negotiations meant to compensate for attorneys' fees incurred as a result of the work made necessary by Fordham's failure to comply with the Court's orders and Lotus's default, up to the entrance in the litigation of current defense counsel. For other work done, the settlement contemplates attorneys' fees limited to one-third of the recovery despite the larger amounts that would be recoverable using a lodestar method. Although the amount of wages claimed to be owed was relatively modest, counsel was able to obtain a recovery representing a substantial portion of that amount, plus additional sums for statutory damages, costs, and attorneys' fees. Indeed, the total payment to Plaintiff represents 79.25 percent of the amount of unpaid wages claimed by Plaintiff. In light of Defendants' complete denial of Plaintiff's overtime claims and Plaintiff's acknowledgment that other similarly situated employees worked and were paid for fewer weekly hours, this high a percentage is extraordinarily positive. *See* **Gervacio v. ARJ Laundry Servs. Inc.**, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); **Villanueva v. 179 Third Avenue Rest Inc.**, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

The actual attorneys' fees accrued to date in this matter using the lodestar method amount to $54,515.00, an amount far in excess of the wages alleged to be owed to Plaintiff herein. Exhibit B at Page 29.

In light of the relative success of the negotiations by counsel for Plaintiff, the award of attorneys' fees and costs sought herein is not only consistent with the agreement between counsel and Plaintiff; it is a fair and reasonable award under the circumstances prevailing in the instant case.

Plaintiff is represented by Glendoval J. Stephens. Mr. Stephens has been in practice since 1992 and has extensive litigation and negotiation experience. Mr. Stephens has handled numerous trials and settlements in civil matters through the years, including FLSA and NYLL matters in federal and New York State courts. For the reasons stated above, the parties request that your Honor approve the settlement agreement as being fair and reasonable under the FLSA and dismiss the action with prejudice.

Respectfully submitted,

_____/s/_____   _____/s/_____
Glendoval J. Stephens GS0903          Douglas Rowe, Esq.
The Stephens Law Firm PLLC            Certilman Balin Adler & Hyman, LLP
305 Broadway, Suite 1200              90 Merrick Avenue, 9th Floor
New York, NY 10007                    East Meadow, NY 11554
Tel: (212) 385-1400                   Tel: (516) 296-7000

